### GROH et v VIOLET et

Ohio Appeals, 4th Dist, Scioto Co
Decided June 16, 1930

William J. Meyer, Portsmouth, for Groh, et.

Miller & Searl, Portsmouth and Knepper & Wilcox, Columbus, for Violet, et.

**MAUCK, J.**

**Section 4736** provides that the county board of education may create a school district from one or more school districts or parts thereof and in so doing shall make an equitable division of the funds or indebtedness between the new district and the districts from which any part of the new district is taken. There is but one statutory limitation upon the power thus conferred upon the county board, and that limitation is expressed in the second sentence of the section referred to:

"Such action of the county board of education shall not take effect if a majority of the qualified electors residing in the territory affected by such order shall, within thirty days from the time such action is taken, file with the county board of education a written remonstrance against it."

Following this the section provides for the appointment of the members of the board of education of the newly created district by the county board of education until such time as members of the board may be regularly elected.

While no statutory limitation upon the power of the county board is written into the section there is the implied limitation, always operating against an administrative board, to the effect that its power must be exercised

"in the absence of fraud, bad faith or the taking of such arbitrary, whimsical and unreasonable action by the board as amounts to an abuse of discretion".

**Board of Education v. Boehm, 102 Oh St. 292.**

The provisions of **Section 4736** are to be taken as a whole. The county board is, of course, obliged to act in good faith, to the end that the power of remonstrance may be preserved as well as to act in good faith so far as the purposes behind the resolution itself are concerned.

The evidence will not be here reviewed at length. That was fully done in the Court of Common Pleas. There is evidence that those interested in the rural school system of Scioto County are divided between those who support and those who do not support the present county board of education in the latter's present methods of conducting the schools and in its plans for the future. There is evidence tending to show that most of the members of the local board ousted by the county board's resolution of March 15 are opponents of the present county board and that the newly appointed members under the same resolution are friendly to the county board.

Bad faith and good faith are difficult terms to define. Judge Taft in **Penn-Mutual Ins Co v Mechanics Savings Bank and Trust Co., 38 L. R. A. 70,** says that "bad faith" is not a technical term used exclusively in actions for deceit. It is an ordinary expression, not of doubtful meaning but means that an act done with actual intent to mislead or deceive another is an act in bad faith. It relates to a state of mind that is capable of proof either by direct or circumstantial proof. The antithetical term "good faith" is said to be an honest intention to abstain from taking any unconscientious advantage of another even thru the forms or technicalities of law, together with an absence of all endeavor or belief of facts which would render the transaction unconscionable. **Jennings v. Lentz, 29 L. R. A. (n. s.) 586.**

The record shows that the county board of education understood that the members that they were attempting to oust were officially unfriendly to the county board and that they feared, altho no effort was made to justify those fears, that the members of the local board to be ousted would not cooperate with the county board in plans that the county board had in mind for the county school system of Scioto County. It seems obvious that if the county board felt that sound policy required a change in districts that would necessarily accomplish the ousting of newly elected board members who were generally hostile to the county board the very delicacy of the situation would require that the local members about to be thus decapitated and their friends should be fully advised of the movement in order to forestall as far as possible the suggestion that the county board was influenced by ulterior motives. Yet we find the county board moving under these circumstances with admitted secrecy, advising literally no one in the affected territory of their consideration of the resolution or of its adoption after it was adopted. This situation lends some color to the charge of bad faith.

It is claimed for the defendants, however, that the statute does not require the members of the county board or its officers to give to the press or any of the people any account of their proceedings. That is true. It is argued then that as the legislature reserved to the people the right of remonstrance the section in question is unconstitutional in that it fails to require notice to be given to the people to the end that they may exercise this reserved right. We find no offense to any constitutional provision in this omission. The fact that the assiduous efforts of learned and energetic counsel on both sides in this case have failed to discover a single instance in which the right of remonstrance has been lost or even placed in peril by a policy of concealment justifies the view that the danger of the people being deprived of this right is negligible. Undoubtedly the legislature, knowing of the intense interest that the public feel in the school system and the many interests that are affected by a change in the lines of a school district, thought that any action taken by the board of education would thru the press and by word passed from mouth to mouth rapidly get to the knowledge of all those interested. Perhaps if in the instant case the members of the county board had been secretive only, that is, if they had done nothing but abstain from advising interested people of the ac-

tion taken, they might have thus successfully avoided an opportunity for a remonstrance altho even under those circumstances a court of equity would have felt considerable chagrin if it had found itself impotent to protect the right of remonstrance.

The evidence in this case, however, shows that the members of the county board were more than secretive. They actually and affirmatively concealed the fact that the resolution had been passed upon March 15, and that concealment continued until the thirty day period for a remonstrance had passed. While the public press on other occasions had been given news items of the official acts of the county board by Mr. McCowen, so that the people generally had a right to believe that the press would advise them of the board's more important actions at least, there was no item given out relating to the resolution of March 15, which was unquestionably the most interesting and important action taken by the board during the whole year. The president of the board, moreover, was asked on cross examination how he figured that the people were going to get up a remonstrance if somebody did not tell them about the resolution against which they would remonstrate. His answer is vitally significant. He said:

"Well, I will tell you. We did it at Harrison Township one time and they stopped it on us—stopped it. We didn't want to take any chances this time when we undertook it."

This is a square admission on the part of the president of the board that he and those for whom he was speaking when he testified had resolved on a policy of concealment for the purpose of defeating the people's power of remonstrance. This is borne out by another most significant circustance. At the same time and in the same resolution that the new district was created the fiscal relations of the affected districts were adjusted and five new members of the board of education were appointed for the newly created district. Their appointment was consequently made on March 15 and they were coming into office not by election but by virtue of appointment. **Section 4748 GC** provides that a person appointed to membership on any board of education shall qualify within ten days of his appointment. These newly appointed members should consequently have qualified by March 25. They did not do so. They did not qualify until April 16, and they did not sooner qualify because no one of them knew of his appointment until the thirty day period had elapsed in which a remonstrance could have been filed. The title to their office could not be attacked by injunction, and while we do not hold that their tenure is affected by their failure to qualify within the time fixed by law we do, however, point out the fact that the county board of education and its officers loaned themselves to a violation of the law itself in order that they might conceal the adoption of the resolution until the time for remonstrance had passed.

In our opinion the county board is thus shown to have actively concealed facts to which their constituents were entitled, and did so for the purpose of defeating the power of the people to remonstrate. This concealment runs thru and affects the whole proceeding and renders the action invalid.

This court was at the time of the hearing of this case of the impression that it might hold the adoption of the resolution to be legal and suspend its effectiveness until interested parties had thirty days opportunity to file remonstrances. This is a little too complicated for a judicial decree. It is easy enough for the county board to renew their action by again adopting the resolution , thus allowing the interested parties the statutory period for the protection of their rights. No rights are lost or prejudiced by requiring the county board to start anew.

We consequently hold the whole transaction void and enter a decree in accordance with the prayer of the petition.

Middleton, PJ, and Blosser, J, concur.